## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ——————————————————— ) | |
| JOEL ROBINSON,                                    ) | |
|                                                   ) | |
|                             Plaintiff,            ) | |
|                                                   ) | |
|              v.                                   )   Civil Action No. 12-0732 (ABJ) |
|                                                   ) | |
| DEUTSCHE BANK NATIONAL                             ) | |
| TRUST COMPANY, as Trustee Under                   ) | |
| Novastar Mortgage Funding Trust                   ) | |
| Series 2006-4, *et al.*,                          ) | |
|                                                   ) | |
|                             Defendants.           ) | |
| ——————————————————— ) | |

### MEMORANDUM OPINION

Plaintiff Joel Robinson has filed this complaint challenging the foreclosure sale of his home. He sued defendants Deutsche Bank National Trust Company ("Deutsche Bank"); Chase Bank; Saxon Mortgage Services, Inc. ("Saxon"); the trustees designated in the deed of trust to his property; and Cohn, Goldberg & Deutsch, LLC, the company that represented the mortgagee and servicing agency. He asserts eleven causes of action under District of Columbia and federal law arising out of his unsuccessful attempts to obtain a loan modification on his mortgage and the eventual foreclosure sale of his home. Defendants Deutsche Bank and Saxon have moved to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Because Robinson fails to state a claim in the counts against these two defendants, the Court will grant their motions and dismiss them from the action.

### BACKGROUND

The complaint contains very little factual information, but what can be gleaned about the relevant events is as follows. Robinson is the former owner of a residence located at 1817 L

Street, N.E., in the District of Columbia.  Compl. [Dkt. # 1-1] ¶ 2.  He purchased the property in 1999, *id.* ¶ 14, and refinanced it in 2006, *id.* ¶ 15.  After his refinancing, the deed of trust on his property was recorded in the District's Land Records, and the lender listed on that deed was Novastar Mortgage, Inc.  *Id.* ¶ 15.  Robinson's monthly payment after the refinancing was $1,300.16.  *Id.* ¶ 20.

In or around January 2007, Robinson began to encounter a financial hardship that caused a "dramatic decrease in his monthly income."  *Id.* ¶ 17.  Between January 2007 through 2008, he requested a loan modification from Saxon, the servicer of his mortgage loan, based on the change in his financial situation.  *Id.*  Robinson alleges that during that time period, Chase Bank was the lender for his property.  *Id.* ¶ 18.  Saxon requested an explanation of Robinson's financial situation, and also asked for certain financial information to support Robinson's request for a loan modification.  *Id.* ¶ 19.  Robinson provided the requested information to Saxon.  *Id.*  Robinson asserts that "[i]nstead of offering the Plaintiff a modification [on] his mortgage that lowered his payment and re-amortized the arrears, Saxon and Chase offered him a series of repayment plans that required substantial down payments and monthly payments that well exceeded his original monthly payment."  *Id.* ¶ 21.  Robinson further contends that "it was impossible for Plaintiff [to] meet the terms of the repayment plan despite his diligent efforts."  *Id.* ¶ 22.

According to the complaint, at an unspecified date between 2008 and June 2009, Deutsche Bank allegedly purchased the deed of trust on Robinson's home from Novastar Mortgage Funding Corporation through a pooling and service agreement ("PSA").  *Id.* ¶¶ 8–13,

29, 31.[1]  On June 19, 2009, a notice of foreclosure sale was recorded and sent to Robinson.  *Id.* ¶ 29.  This notice named Deutsche Bank as the note holder.  *Id.*  A foreclosure sale on Robinson's property occurred on July 20, 2009.  *Id.*  Robinson states that Deutsche Bank filed a complaint for possession in Superior Court of the District of Columbia, Civil Division, Landlord Tenant Branch, but he does not specify when this complaint was filed.  *Id.* ¶ 45.

Robinson filed this suit against defendants on February 10, 2012 in the Superior Court of the District of Columbia.  Compl. at 1.  The complaint asserts eleven causes of action:

- Count I:  Violation of D.C. Code § 28-3904 against Saxon, Chase Bank, and Deutsche Bank

- Count II:  Violation of D.C. Code § 42-815 against Deutsche Bank, trustees, and Cohn, Goldberg & Deutsch, LLC ("CGD")

- Count III:  Violation of D.C. Code § 47-1431 against Chase Bank, Deutsche Bank, trustees, and CGD

- Count IV:  Violation of D.C. Code § 28-3904 against Deutsche Bank, trustees, and CGD

- Count V:  Breach of contract against all defendants

- Count VI:  Tortious interference with a contract against all defendants

- Count VII:  Breach of duty of good faith and fair dealing against all defendants

- Count VIII:  Breach of fiduciary duty against trustees and CGD

- Count IX:  Violation of 12 U.S.C. § 2605 against Saxon, Chase Bank, and Deutsche Bank

- Count X:  Declaratory relief/quiet title against all defendants

- Count XI:  Equitable estoppel

---

1       A PSA "is a purchase and sale agreement whereby a depositor agrees to sell certain mortgage loans to a trust, the beneficiaries of which purchase interests in the trust."  *Id.* ¶ 10. According to Robinson, Novastar Mortgage Funding Corporation was the Depositor in this case, and Deutsche Bank was the trustee.  *Id.* ¶¶ 8, 11.  The PSA was filed with the Securities and Exchange Commission.  *Id.* ¶ 9.

*Id.* ¶¶ 16–83.  Robinson asks the Court to divest title and invalidate the 2009 foreclosure sale, to have Robinson declared "as sole owner," to have the deed of trust lien declared "null and void," and for statutory, general, actual, and punitive damages.  Compl. Prayer for Relief ¶¶ A–J.

On May 7, 2012, defendants Saxon and Deutsche Bank removed the case to this Court based on federal question and diversity jurisdiction.  Notice of Removal [Dkt. #1] at 2.  Deutsche Bank and Saxon have also moved to dismiss the counts against them for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Deutsche Bank Mot. to Dismiss [Dkt. # 11] at 1; Saxon Mot. to Dismiss [Dkt. #12] at 1.  Robinson opposes their motions.  Pl.'s Opp. to Deutsche Bank Mot. to Dismiss [Dkt. # 14] ("Pl.'s Opp. to Deutsche Mot."); Pl.'s Opp. to Saxon Mot. to Dismiss [Dkt. # 17] ("Pl.'s Opp. to Saxon Mot.").  Because the counts asserted against Deutsche Bank and Saxon fail to state a claim under Fed. R. Civ. P. 12(b)(6), the Court will grant their motions to dismiss.

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  556 U.S. at 678.  And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." *Id.* A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in plaintiff's favor, and the Court should grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

## ANALYSIS

In this case, Robinson asserts eleven causes of action arising out of the events surrounding his attempts to obtain a loan modification and the eventual foreclosure sale of his home. Robinson does not dispute defendants' assertion that his mortgage was in default. *See* Deutsche Bank Mem. in Supp. of Mot. to Dismiss [Dkt. # 11] ("Deutsche Mem.") at 9 (stating that defendant fell into arrears on his mortgage payments); Saxon Reply to Pl.'s Opp. to Mot. to Dismiss [Dkt. # 19] ("Saxon Reply") at 1 (stating that "plaintiff defaulted on his loan"); *see also* Compl. ¶ 21 (stating that Saxon and Chase Bank did not offer a loan modification that "re-

amortized the arrears" on his mortgage); *id.* ¶ 22 (stating that "it was impossible for Plaintiff [to] meet the terms of the repayment plan despite his diligent efforts").

Nonetheless, Robinson alleges that the foreclosure on his house was wrongful, and he asks the Court to invalidate the foreclosure sale and declare him "sole owner" of the property for four main reasons.   Compl. Prayer for Relief ¶ E.   First, he contends that he was offered "unconscionable repayment terms" when he asked for a loan modification from his lender and mortgage servicer.   Compl. ¶¶ 21–24.   Second, he asserts that Deutsche Bank was not the rightful holder of the note – and, therefore, it had no right to foreclose – because the assignment of the note and deed of trust to Deutsche Bank was not recorded in the District's land records. *See id.* ¶¶ 32–34; *see also* Pl.'s Opp. to Deutsche Mot. at 7.   Third, he argues that the notice of foreclosure was defective.   *See id.* ¶¶ 32–37.   Fourth, he alleges that his lenders and loan servicer failed to notify him when the servicing of the loan was transferred.   *Id.* ¶¶ 68–69.   These four assertions form the basis of the ten counts that are currently before the Court, and since Robinson fails to provide factual or legal support for them, the Court will grant Deutsche Bank and Saxon's motions to dismiss the counts against them.[2]

## I.   Count I:   Violation of D.C. Code § 28-3904 Against Saxon, Deutsche Bank, and Chase Bank

Under the District of Columbia Consumer Protection Procedures Act ("DCCPPA"), a person cannot "make or enforce unconscionable terms or provisions of sales or leases."   D.C. Code § 28-3904(r).   The DCCPPA authorizes a private cause of action for violations of any of its subsections, and allows a plaintiff to obtain remedies including treble damages, reasonable attorney's fees, punitive damages, injunctive relief, and "any other relief which the court deems

---

[2]   Since Deutsche Bank and Saxon are the only defendants who have moved to dismiss, the Court's dismissal of the relevant counts only applies to then.   Further, the Court will not address Count VIII in this opinion because Deutsche Bank and Saxon are not named in that claim.

proper." D.C. Code § 28-3905(k)(1); *see also Johnson v. Long Beach Mortg. Loan Trust*, 451 F. Supp. 2d 16, 38 (D.D.C. 2006) ("The express terms of 28-3905(k)(1) therefore authorize Plaintiff to bring an action for a violation of § 28-3904(r), and to seek money damages and other relief as remedies."). Count I alleges that defendants violated D.C. Code § 28-3904(r) by "offering the Plaintiff unconscionable repayment terms." Compl. ¶ 22. Defendants have moved to dismiss this count on the grounds that it does not identify or allege any conduct that would constitute a violation of the DCCPPA. Deutsche Mem. at 3; Saxon Mem. in Supp. of Mot. to Dismiss [Dkt. # 12] ("Saxon Mem.") at 4. The Court agrees.

The DCCPPA prohibits unconscionable terms in transactions, sales, leases, and contracts. *See* D.C. Code § 28-3904(r)(1)–(5)[3]; *see also Williams v. First Gov. Mortg. & Investors Corp.*, 225 F.3d 738, 742–44 (D.C. Cir. 2000) (applying section 28-3904(r) where the plaintiff executed a refinancing agreement with allegedly unconscionable terms); *Hughes v. Abell*, 634 F. Supp. 2d 110, 112–14 (D.D.C. 2009) (applying section 28-3904(r) where the plaintiff accepted the terms of the defendant's contract and executed the agreement). Here, the complaint does not allege that Robinson executed a contract or agreement that bound him to "unconscionable repayment terms": Robinson's grievance is with what he was offered. *See* Compl. ¶ 24 (asserting that defendants' "practice of offering the Plaintiff unconscionable repayment terms wrongfully forced [him] into foreclosure"). In its motion to dismiss, Saxon specifically states that no binding loan modification agreement was reached between the parties, Saxon Mem. at 3, and in his

---

[3]     In fact, the section of the DCCPPA that Robinson relies on to support his allegation in Count I specifically only applies to transactions that are "consummated." *See* D.C. Code § 28-3904(r)(1) (stating that to determine whether a term is "unconscionable," courts must weigh a number of factors including "knowledge by the person at the time credit sales are consummated that there was no reasonable probability of payment in full of the obligation by the consumer"); *see also* Compl. ¶ 23 (alleging that the repayment terms were unconscionable because when defendants offered them, they "knew that there was no reasonable probability of payment in full of the obligation of the Plaintiff").

opposition, Robinson acknowledges that Count I is based on "the circumstances surrounding his *attempts to obtain* a loan modification." Pl.'s Opp. to Saxon Mot. at 5 (emphasis added). Since no transaction was consummated, section 28-3904(r) does not apply, and Robinson's allegations that defendants made an "unconscionable offer" in violation of the DCCPPA fails as a matter of law. Accordingly, the Court will dismiss Count I against Deutsche Bank and Saxon under Fed. R. Civ. P. 12(b)(6).[4]

## II. Count II: Violation of D.C. Code § 42-815 Against Deutsche Bank, Trustees, and CGD

Count II alleges that Deutsche Bank violated the notice requirements of the District's foreclosure statute, D.C. Code § 42-815, by issuing a defective notice of foreclosure and failing to properly deliver the notice to Robinson. Compl. ¶¶ 27–38.

### A. D.C. Code § 42-815 does not authorize an independent cause of action

It is unclear what cause of action Robinson is asserting in Count II. To the extent Robinson is alleging an independent cause of action under section 42-815, the claim fails as a matter of law. *Young v. 1st Am. Fin. Servs.*, 992 F. Supp. 440, 445 (D.D.C. 1998) ("No court has ever recognized an independent cause of action under § 45-715(b) [now codified as § 42-815]. The appropriate avenue to assert a violation of this section is a claim of wrongful foreclosure, in which a party can attack a foreclosure – once it has been completed – as contrary to law."); *see also Koker v. Aurora Loan Servicing, LLC*, No. 12-1069, 2013 WL 40320, at *5 (D.D.C. Jan 3, 2013) (dismissing a claim identical to the claim here partly on the grounds that section 42-815 does not authorize a private cause of action).

---

4       Since the Court is dismissing Count I for failure to state a claim, it will not reach defendants' other arguments, including that Count I is time-barred, that Robinson has failed to allege any facts supporting damages, or that Deutsche Bank cannot be held liable because it was not involved in offering the allegedly unconscionable terms. *See* Deutsche Mem. at 2–3; Saxon Mem. at 4–5.

B.  Count II fails to state a claim for wrongful foreclosure

In his opposition memorandum, Robinson contends that Count II was meant to assert a wrongful foreclosure claim based on the alleged violations of section 42-815.  Pl.'s Opp. to Deutsche Mot. at 8.  Assuming that the count can be read to embrace such a claim, the claim also fails.

"[A]n action for wrongful or improper foreclosure may lie where the property owner sustains damages by reason of a foreclosure executed in a manner contrary to law."  *Johnson v. Fairfax Vill. Condo. IV Unit Owners Ass'n*, 641 A.2d 495, 505 (D.C. 1994).  In the District, a borrower in default is entitled to advance written notice of a foreclosure sale.  D.C. Code § 42–815(c)(1)(A) ("[a] foreclosure sale . . . shall not take place unless the holder of the note . . . gives written notice of the intention to foreclose . . . to the person who holds the title of record . . . .").  The contents of the notice of foreclosure are governed by 9 DCMR § 3100, *et seq*.  Among other requirements, a notice of foreclosure must include at least the "name and address of the holder of the note and his or her telephone number of person to call if owner wishes to stop foreclosure."  9 DCMR § 3100.2(f).  The notice must also include the "amount required to cure the default and reinstate the loan, including all past due payments, penalties, and fees."  D.C. Code § 42-815.02(a)(11)(B)(iv).

Count II points to three alleged deficiencies in the foreclosure notice, but none of these purported deficiencies constitute a violation of section 42-815(c)(1)(A), and therefore none of them can support Robinson's claim for wrongful foreclosure.

1.  *Robinson has failed to show that the foreclosure notice inaccurately listed Deutsche Bank as the note holder*

First, Robinson alleges that the foreclosure notice improperly named Deutsche Bank as the note holder.  Compl. ¶ 34.  He argues that Deutsche Bank "was not the rightful

noteholder" because the assignments of the note and the deed of trust to Deutsche Bank were not recorded.  *Id.* ¶ 32; *see also* Pl.'s Opp. to Deutsche Mot. at 7.  But District of Columbia law does not require an assignment of a note or deed of trust to be recorded in order for the transfer to be valid.  *See Diaby v. Bierman*, 795 F. Supp. 2d 108, 112 (D.D.C. 2011), citing D.C. Code § 42-801, ("[T]he laws of the District of Columbia require that a mortgage or deed of trust be recorded, not the underlying note . . . .  Therefore, a failure to record an assignment does not give rise to a cause of action."); *Leake v. Prensky*, 798 F. Supp. 2d 254, 257 (D.D.C. 2011) (concluding that a bank could enforce a note's foreclosure provision, despite its failure to record the assignment of the note because "[t]he D.C. Code provides that '[t]ransfer of an instrument . . . vests in the transferee any right of the transferor to enforce the instrument,' D.C. Code § 28:3-203(b), and under D.C. law the Note's transfer carries with it the security for its payment."); *see also Grant II v. BAC Home Loans Servicing*, No. 10-1543, 2011 WL 4566135, at * 3 (D.D.C. Sept. 30, 2011), citing D.C. Code § 42-401, ("D.C. law does not require that a transfer of a Deed of Trust be recorded in order to be effective.").[5]  Therefore, the alleged failure

---

[5]     In Count III, Robinson alleges that Deutsche Bank failed to record the assignment of the deed of trust, which according to Robinson is required under D.C. Code § 47-1431.  Compl. ¶ 41; *see also* Pl.'s Opp. to Deutsche Mot. at 7.  But even if this allegation were accurate, the failure to assign the deed of trust would not undermine the validity of its transfer to Deutsche Bank.  In *In re Neagle*, No. 11-00025, 2012 WL 560299, at *2 n.3 (Bankr. D.D.C. Feb. 21, 2012) (citation omitted), the court explained:

> Section 47-1431 is part of Chapter 14, entitled "Taxation of Recordation and Transfers of Real Property" and appears to be intended to facilitate enforcement of the tax laws, not to specify requirements for perfection of deeds, security interests, and mortgages.  For a failure to comply with § 47–1431(a), D.C. Code § 47-1433 imposes, in certain instances, penalties to which the tax penalty waiver provisions of D.C. Code § 49-4221 apply under D.C. Code § 47-4221(b)(6) . . . .  There is no precedent holding that a failure to file within the 30-day period renders a deed of trust unenforceable.

to record the assignment of the note or the deed of trust to Deutsche Bank does not undermine Deutsche Bank's ability to enforce the note.

Robinson also questions Deutsche Bank's ownership of the note.  He explains that after his 2006 refinancing, the deed of trust for his property named Novastar Mortgage, Inc. as the lender, and between 2007 and 2008, Chase Bank allegedly became the note holder.  Compl. ¶¶ 30–31.  He adds that the PSA that allegedly transferred the note on his property to Deutsche Bank was between Novastar Funding Corporation and Deutsche Bank and "there is nothing to indicate that Novastar Mortgage, Inc. or Chase had the power to convey mortgages or negotiate mortgage notes to the trust."  *Id.* ¶ 33.  It is unclear what Robinson's basis for questioning Deutsche Bank's ownership of the note is.  But insofar as Robinson is arguing that Deutsche Bank did not acquire ownership of the notes in the trust – including the note to his home – Robinson fails to provide any factual support for this allegation.  In fact, according to Robinson, the PSA "is a legal document that was . . . filed with the Securities and Exchange Commission," compl. ¶ 9, and Deutsche Bank is the trustee of the PSA, *id.* ¶ 8.  Robinson has not provided any facts to undermine the accuracy or legality of this filing, or to support his conclusory allegation that Novastar Mortgage or Chase may not have had the power to convey mortgage notes to the trust.  Therefore, this argument also fails to plausibly allege that the foreclosure notice was deficient because it listed Deutsche Bank as the note holder.

> 2. *Robinson has not pled facts to support his conclusory claim that the foreclosure notice contained an inaccurate cure amount*

Second, Robinson alleges that Deutsche Bank violated section 42-815 because the foreclosure notice failed to accurately state the balance owed and the minimum amount to cure. Compl. ¶ 36.  Under the DCCPPA, a notice of foreclosure must include the "amount required to cure the default and reinstate the loan, including all past due payments, penalties, and fees."

D.C. Code § 42-815.02(a)(11)(B)(iv).  "[T]he cure amount stated in the foreclosure notice must be accurate" in order to fulfill its statutory purpose of allowing the borrower to cure the default. *Bank-Fund Staff Fed. Credit Union v. Cueller*, 639 A.2d 561, 563–64 (D.C. 1994).  "Therefore, providing an accurate cure amount is part of the notice requirement under District of Columbia law, and failure to provide an accurate cure amount may give rise to an action for wrongful foreclosure." *Diaby*, 795 F. Supp. 2d at 114.

In *Diaby*, the plaintiff claimed that the defendant did not give him an accurate cure amount because the defendant:  (1) reported a past due amount to a bankruptcy court that failed to credit two payments that the plaintiff had made; and (2) reported a past due amount to another organization that was more than twice the amount it had previously reported to the bankruptcy court.  795 F. Supp. 2d at 114.  The court acknowledged the "considerable force" of the defendant's argument that the plaintiff had failed to state a claim, but it ultimately concluded that drawing all inferences in the plaintiff's favor, the plaintiff had "stated a plausible claim hanging on [a] slender thread." *Id.*

Unlike the plaintiff in *Diaby*, Robinson's complaint provides no factual support for his conclusory allegation that the cure amount in the foreclosure notice was inaccurate.  It does not reference any payments that were not credited or proffer any other explanations.   In his opposition memorandum, he alleges that the amount was inaccurate because "it failed to credit payments that were made by the plaintiff," and it was identical to the cure amount listed on a foreclosure notice issued four months earlier.  Pl.'s Opp. to Deutsche Mot. at 8.  But these allegations are not in the complaint, and "'[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *McManus v. District of Columbia*, 530 F.

Supp. 2d 46, 74 n.25 (D.D.C. 2007), quoting *Arbitraje Case de Cambio, S.A. v. United States Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003).

Even if the Court were to consider these new allegations, they would not save Count II from dismissal.  Regarding defendants' alleged failure to credit payments, Robinson does not provide any information about the missing payments.  In *Diaby*, the plaintiff specified the amounts of the payments that he alleged were not credited, and even with this information, the complaint barely survived the motion to dismiss.  Robinson's failure to provide this minimum amount of information prevents him from crossing the line from stating a claim that possible to one that is facially plausible.  *Iqbal*, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.").  Moreover, the fact that the cure amount did not increase between the March and July foreclosure notices does not necessarily mean that the July foreclosure notice was inaccurate.  As Deutsche Bank notes in its reply, a lender has the right to accelerate the amount owed upon a default but it is not obligated to impose these late fees, and a lender's decision to forego the late fees does not violate the notice requirements of the District's foreclosure statute.  Deutsche Reply to Pl.'s Opp. to Mot. to Dismiss [Dkt. # 18] ("Deutsche Reply") at 3.

> 3.  *Robinson has failed to factually allege that Deutsche Bank did not adhere to statutory requirements when the foreclosure notice was sent*

Third, Robinson contends that defendants failed to properly send the notice of foreclosure.  Compl. ¶ 37.  Under District of Columbia law, however, "it is well settled that actual notice of a foreclosure sale is not required if the statutory requirements are adhered to." *Young v. 1st Am. Fin. Servs.*, 992 F. Supp. 440, 445 (D.D.C. 1998).  Again, Robinson provides no factual support for his conclusory allegation that Deutsche Bank improperly sent the foreclosure notice, and he does not explain what statutory requirement Deutsche Bank failed to

meet.  Without such factual information, Robinson fails to state a claim that is plausible on its

face.  *See Iqbal*, 556 U.S. at 678.

Since Robinson has failed to plausibly allege that the foreclosure notice was deficient or

that any of the alleged deficiencies constituted a violation of section 42-815, he has failed to

provide a basis for his wrongful foreclosure claim.  Therefore, the Court will dismiss Count II

against Deutsche Bank.

## III. Count III:  Violation of D.C. Code § 47-1431 Against Deutsche Bank, Chase Bank, Trustees, and CGD

Count III alleges that Deutsche Bank violated D.C. Code § 47-1431 by failing to record

the assignment of the deed of trust to Deutsche Bank.  Compl. ¶¶ 39–42; *see also* Pl.'s Opp. to

Deutsche Mot. at 9.  Section 47-1431 provides that:

> Within 30 days after . . . an economic interest in real property is
> transferred . . . all transferees of, and all holders of the security interest in,
> real property shall record a fully acknowledged copy of the deed or other
> document, including the lot and square number of the real property
> transferred or encumbered, with the Recorder of Deeds of the District of
> Columbia.

D.C. Code § 47-1431(a).

"Section 47-1431(a) does not expressly confer a private right of action; rather, violators

of the statute face only a monetary fine."  *See Koker*, 2013 WL 40320 at *7, citing D.C. Code

§ 47-1433(c).  Therefore, "[i]f a private right of action for damages under [the statute] is to exist,

. . . it must be judicially inferred, or as is commonly stated, implied."  *Dorsey v. U.S. Dep't of

Labor*, 41 F.3d 1551, 1554 (D.C. Cir. 1994).  The plaintiff bears the burden of proving that "in

spite of the absence of any explicit authorization, the D.C. Council intended to imply a right to

sue for damages for violations of" section 47-1431(a).  *See Coates v. Elzie*, 768 A.2d 997, 1001

(D.C. 2001).

In his pleadings, Robinson simply assumes that he can assert an independent claim under section 47-1431(a), and he fails to carry his burden of demonstrating that there is an express or a judicially inferred private right of action under this section of the statute. Therefore Court will dismiss Count III against Deutsche Bank for failure to state a claim. *See Koker*, 2013 WL 40320 at *7 (dismissing the plaintiff's section 47-1431 claim because the statute "does not expressly confer a private right of action" and the plaintiff provided no analysis regarding whether the D.C. Council intended for courts to imply a right to sue for damages for violations of that section); *see also Henok v. Chase Home Fin.*, LLC, No. 12-336, 2013 WL 167941, at *7 (D.D.C. Jan. 16, 2013) (granting the defendants' motion to dismiss the plaintiff's section 47-1431 claim because the plaintiff had "not carried his burden of showing that there is a private right of action for damages under this statute").[6]

## IV. Count IV:  Violation of D.C. Code § 28-3904(e) Against Deutsche Bank, Trustees, and CGD

The DCCPPA makes it an unlawful trade practice for any person to "misrepresent as to a material fact which has a tendency to mislead." D.C. Code § 28-3904(e). Count IV asserts that Deutsche Bank violated the DCCPPA by (1) "proceeding with a wrongful foreclosure sale with the erroneous . . . Notice of Foreclosure Sale that did not reflect the proper noteholder and did not accurately state the amount owed on the note or the cure amount," and (2) "filing a wrongful complaint for possession in" D.C. Superior Court. Compl. ¶¶ 43–47. By taking these actions,

---

6       In its motion, Deutsche Bank argues that the Court should dismiss Count III because "the laws of the District of Columbia require that a mortgage or deed of trust be recorded, not the underlying note. Therefore, a failure to record an assignment does not give rise to a cause of action." Deutsche Mem. at 5, quoting *Diaby*, 795 F. Supp. 2d at 112. However, the Court in *Diaby* made this statement in relation to D.C. Code § 42-801, which only requires the recording of mortgages and deeds of trust. The Court did not address section 47-1431, which is the relevant statute here.

Deutsche Bank allegedly misrepresented material facts that misled Robinson.[7]  *Id.* ¶¶ 44–45.

Deutsche Bank argues that this count should be dismissed for a number of reasons including that:

(1) a foreclosure is not a "consumer transaction" that falls within the purview of the DCCPPA;

and (2) Robinson has not alleged an injury in fact caused by the alleged violation.  Deutsche

Mem. at 5–6.

First, Deutsche Bank argues that the DCCPPA "was designed to police trade practices

arising only out of consumer-merchant relationships," and a foreclosure is not a "consumer

transaction" within the purview of the DCCPPA.  Deutsche Mem. at 7, quoting *Howard v. Riggs*

*Nat. Bank*, 432 A.2d 701, 709 (D.C. 1981); *see also Shaw v. Marriot Int'l*, 605 F.3d 1039, 1044

(D.C. Cir. 2010) (holding that the plaintiffs lacked standing to bring a claim under the DCCPPA

because "[t]hey did not engage in consumer transactions within the meaning of the Act and are

not entitled to its protections").  Robinson fails to respond to this argument, so the Court will

deem it as conceded.  *See Lewis v. District of Columbia*, No. 10-5275, 2011 WL 321711, at *1

(D.C. Cir. Feb.2, 2011) (per curiam) ("'It is well understood in this Circuit that when a plaintiff

files an opposition to a dispositive motion and addresses only certain arguments raised by the

defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'"),

quoting *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C.

2003), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004); *see also Koker*, 2013 WL 40320 at *8 (dismissing

an identical claim partly based on the plaintiff's failure to respond to the defendants' contention

that a foreclosure is not a "consumer transaction" to which the DCCPPA applies).

Even assuming, without deciding, that a foreclosure is a "consumer transaction" within

the purview of the DCCPPA, Count IV still fails to state a claim for material misrepresentation.

---

7  Robinson does not specify which subsection of the DCCPPA is at issue in Count IV but he appears to be referring to section 28-3904(e).

"[A] representation is material if it reasonably influences a plaintiff to take an action he or she may have refrained from taking if aware of the actual facts." *Jackson v. ASA Holdings*, 751 F. Supp. 2d 91, 99 (D.D.C. 2010), quoting *C & E Servs., Inc. v. Ashland, Inc.*, 498 F. Supp. 2d 242, 258 (D.D.C. 2007).   Further, "[a]lthough the DCCPPA provides that misrepresentation is an unlawful trade practice 'whether or not any consumer is in fact misled, deceived or damaged thereby,' D.C. Code § 28-3904, District of Columbia courts have explained that in order to have standing to sue in court for a violation of the DCCPPA (as opposed to seeking administrative remedies), a plaintiff must establish that she has suffered damage as a result of the unlawful trade practice." *Id.*, quoting *Osbourne v. Capital City Mortg. Corp.*, 667 A.2d 1321, 1329–30 (D.C. 1995).

In *Jackson*, the plaintiff alleged that the defendants violated D.C. Code § 28-3904(e) by misrepresenting the fact that they would help her obtain a loan modification, and that as a result of the misrepresentation, she suffered damages including the loss of her property, late fees, collection costs, and interest. *Id.* at 98–99.  The court held that these allegations failed to state a claim because the plaintiff did not explain what acts, if any, she would or would not have taken if she had been aware of the defendants' misrepresentation.  *Id.* at 99.  The court added that the plaintiff also failed to allege any facts supporting damages or injury because she failed to allege that defendants' failure to assist her caused the foreclosure of her home, caused her to submit late payments, or to incur any additional costs associated with her loans.  *Id.*

As in *Jackson*, Robinson has failed to explain what actions he would have taken if he had been aware of defendants' alleged misrepresentations.  Moreover, he has failed to allege any facts that plausibly demonstrate that he has been damaged by defendants' alleged misrepresentations.  He claims that as a result of defendants' misrepresentations, he has suffered

17

damages resulting from the wrongful foreclosure of his property.  Compl. ¶ 47.  But he has not shown – or even alleged – that the purported misrepresentations in the notice of foreclosure prevented him from curing his default or saving his property from foreclosure.  In fact, Robinson acknowledges in his complaint that "it was impossible for [him to] meet the terms of the repayment plan despite his diligent efforts."  *Id.* ¶ 22.  Further, Robinson does not assert that the alleged misrepresentation in the complaint filed by Deutsche Bank in D.C. Superior Court prevented him from defending the case or resulted in his eviction.  Therefore the Court will dismiss Count IV as against Deutsche Bank for failing to state a claim because Robinson has conceded Deutsche Bank's argument that the DCCPPA does not apply to a foreclosure, and he has failed to demonstrate that Deutsche Bank's alleged misrepresentations were material or caused his damages.

## V.  Count V:  Breach of Contract Against All Defendants

Count V asserts a breach of contract claim.  "To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach."  *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).

### A.  Count V fails to state a claim against Saxon

Robinson's breach of contract claim against Saxon fails to meet the first requirement of *Tsintolas* because he does not allege a contractual relationship with Saxon.  Compl. ¶¶ 49–50 (alleging Robinson had a contract with his lenders and identifying Chase Bank and Deutsche Bank as the purported lenders during the relevant period).  Robinson attempts to cure this fatal flaw by asserting that Saxon was an agent of Deutsche Bank and Chase Bank, and is therefore

liable for their contractual breach.  Compl. ¶ 50.  But this argument fails as a matter of law.  In the District of Columbia:

> Where a principal is disclosed, no liability will fall upon the agent for acts committed by the principal unless he binds himself for same by definite words or stipulation.  Nor does liability attach to an agent of a disclosed principal for his act within the scope of the agency unless he binds himself by definite words or stipulation.

*Rittenberg v. Donohoe Constr. Co.*, 426 A.2d 338, 341 (D.C. 1981) (citations omitted).  Here, Robinson does not allege that he had a contractual relationship with Saxon, or that the agency relationship between Saxon and the lenders was not disclosed to him.  Compl. ¶¶ 49–50 (demonstrating that Robinson knew Saxon was an agent of Chase and Deutsche Bank).  Therefore, there is no legal basis for his breach of contract claim against Saxon, and the Court will dismiss it under Fed. R. Civ. P. 12(b)(6).

   B.  Count V fails to state a claim against Deutsche Bank

      Count V alleges that Robinson had a contract with his lenders – Chase Bank and Deutsche Bank; that this contract was memorialized in the note that he executed during the 2006 refinancing of his property; and that the lenders breached their contractual duties by failing to properly assign the note and deed of trust, and failing to follow proper foreclosure procedures.  Compl. ¶¶ 48–52.  These allegations are legally insufficient for a breach of contract claim because Robinson has not alleged or demonstrated that the note – the contract in question – imposed a duty upon defendants to "properly assign" the note or deed of trust, or to follow particular foreclosure procedures; the complaint does not point to which provisions of the note gave rise to such contractual duties.  Since Robinson has failed to allege or show that the note

imposed the obligations that defendants allegedly breached, the Court will grant Deutsche Bank's motion to dismiss Count V.[8]

## VI. Count VI:  Tortious Interference with a Contract Against All Defendants

Count VI alleges that all defendants tortiously interfered with the contract by wrongfully foreclosing on Robinson's property and interfering with his ability to perform under the note. Compl. ¶¶ 53–57.  "To prevail on a claim of tortious interference with contract, a plaintiff must establish:  '(1) the existence of a contract, (2) defendant's knowledge of the contract, (3) defendant's intentional procurement of the contract's breach, and (4) damages resulting from the breach.'"  *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 325 (D.C. 2008), quoting *Cooke v. Griffiths-Garcia Corp.*, 612 A.2d 1251, 1256 (D.C. 1992).

### A.  Count VI fails to state a claim against Deutsche Bank

The complaint identifies the "contract" in question as the note that Robinson executed during the refinance transaction for his property.  Compl. ¶ 54, citing *id.* ¶¶ 49–50.  Robinson asserts that Deutsche Bank intentionally caused the breach of this contract "by wrongfully foreclosing on the Property and interfering with the Plaintiff's ability to perform under the Note."  *Id.* ¶ 56.  According to the complaint, when Deutsche Bank took these allegedly tortious actions, it was the purported note holder.  *Id.* ¶ 50 (stating that Deutsche Bank was the purported note holder after 2008); *id.* ¶ 29 (stating that the foreclosure sale occurred in 2009).  "[T]he hornbook rule [is] that 'the defendant's breach of his own contract with the plaintiff is of course

---

8       Moreover, another court in this district recently examined a claim that was identical to Count V and concluded that the "allegations [were] contradictory and self-defeating."  *Koker*, 2013 WL 40320, at *8.  The claim simultaneously argues that the lender breached its duties under the note, and that the lender was not the note holder.  *See* Compl. Prayer for Relief ¶ A (seeking declaratory judgment that during the relevant period, Deutsche Bank failed to become the note holder for the deed of trust in question).  But if Deutsche Bank was not the holder of the note, then it was not a party to the contract, and it could not have breached a contract to which it was not a party.

not a basis for the tort' of interference with contractual relations.  This rule stems from the common sense notion that a plaintiff should not be allowed to convert a breach of contract claim into a claim for tortious interference." *Raskauskas v. Temple Realty Co.*, 589 A.2d 17, 26 (D.C. 1991), quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 129, at 990 (5th ed. 1984).

In an attempt to resist this conclusion, Robinson argues that "it is plausible that Deutsche Bank tortuously interfered with the contract between plaintiff and Chase or Novastar."  Pl.'s Opp. to Deutsche Mot. at 12.  This argument also fails.  The tortious interference claim is predicated on the breach of contract claim in Count V.  Compl. ¶¶ 54–56.  The Court has already dismissed the breach of contract claim because Robinson failed to allege or demonstrate that the lenders breached any contractual duties under the note.  Since there was no breach of the contract, Deutsche Bank cannot be held liable for causing a non-existent breach.  Therefore, Count VI against Deutsche Bank fails as a matter of law.[9]

B. Count VI fails to state a claim against Saxon

Count VI also alleges that Saxon tortiously interfered with Robinson's contract with Deutsche Bank and Chase Bank.  Compl. ¶¶ 54–56.  An agent cannot be held liable for tortious interference with a contract of its principal unless the agent "improper[ly] interfere[s] with contractual relations . . . with actual malice or for his own benefit, rather than for the [principal's] interest."  *Parker v. BAC Home Loans Servicing LP*, 831 F. Supp. 2d 88, 92 (D.D.C. 2011), quoting *Nickens v. Labor Agency of Metro. Wash.*, 600 A.2d 813, 820 (D.C. 1991) (alteration in original).  In order to find malice, "'a court must find an independently

---

9       This analysis applies equally to Saxon, and in addition to the reasons listed in the next section, the Court will also dismiss Count VI against Saxon for this reason.

wrongful or illegal act.'"  *Id.* at 93, quoting *Curaflex Health Servs., Inc. v. Bruni*, 899 F. Supp. 689, 697 (D.D.C. 1995).

In *Parker*, the court held that the plaintiff had sufficiently made out a claim for tortious interference because the complaint had alleged that the agent acted "in bad faith."  *Id.* Specifically, the complaint asserted that the agent:  (1) "knowingly and irresponsibly amassed a servicing portfolio that it simply could not handle"; (2) "knew of its systemic failures, [but] it still knowingly and intentionally failed to rectify [them]"; (3) "knew that it was wrongfully declaring loan modifications to be void"; and (4) "intentionally procur[ed] breaches between the class members and their noteholders."  *Id.* (internal quotation marks and citations omitted).  The court explained that the sufficiency of these assertions was "a reasonably close call," but ultimately concluded that they were sufficient.  *Id.*

The allegations in Robinson's complaint do not rise to the level that the *Parker* court found to be "a reasonably close call."  Robinson has not alleged that Saxon acted with "actual malice," for its own benefit, or that Saxon committed an independently wrongful or illegal act. Rather it makes a conclusory statement that "[d]efendants intentional [sic] caused the breach by wrongfully foreclosing on the Property and interfering with the Plaintiff's ability to perform under the Note."  Compl. ¶ 56.  Robinson provides no factual support for his conclusion, nor does he explain how Saxon intentionally caused the breach of the contract.  This lack of factual information distinguishes this case from *Parker*, and "fails to nudge the plaintiff's claim 'across the line from conceivable to plausible."  *Koker*,  2013 WL 40320, at *9, citing *Iqbal*, 556 U.S. at 680.  Therefore, the Court will grant Saxon's motion to dismiss Count VI.

**VII.    Count VII:  Breach of Duty of Good Faith and Fair Dealing Against All Defendants**

Count VII alleges that defendants breached the implied duty of good faith and fair dealing by "destroy[ing] the Plaintiff's ability to enjoy the benefits of the contract – the quiet use and enjoyment of his home."  Compl. ¶¶ 58–61.  In the District of Columbia, "'all contracts contain an implied duty of good faith and fair dealing.'"  *Murray*, 953 A.2d at 321, quoting *Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006).  Under this implied duty, "neither party [to a contract] shall do anything which . . . destroy[s] or injur[es] the right of the other party to receive the fruits of the contract."  *Id.*, quoting *Allworth*, 890 A.2d at 201.

A.   Count VII fails to state a claim against Saxon

As Saxon correctly notes in its motion to dismiss, the complaint does not allege an existing contract between Saxon and Robinson.  Saxon Mem. at 6.  Rather, both the complaint and Robinson's subsequent pleadings seek to hold Saxon liable under Count VII because it "acted as agent to Deutsche Bank and contributed to the breach of duty of good faith and fair dealing."  Pl.'s Opp. to Saxon Mot. at 10; *accord* Compl. ¶ 50.  But this allegation fails as a matter of law because in the District, "a claim for breach of the implied covenant of good faith and fair dealing cannot exist in the absence of a contractual relationship."  *See Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 284 (D.D.C. 2011), citing *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 627 (D.C. 1997).  Accordingly, the Court will dismiss Count VII against Saxon.

B.   Count VII fails to state a claim against Deutsche Bank

Count VII also fails as to Deutsche Bank.  Count VII does not identify the contract that was allegedly breached or provide any factual details about the defendants' actions that purportedly interfered with the ownership of his home.  Insofar as Robinson is alleging that

Deutsche Bank breached its duty of good faith and fair dealing by foreclosing on his house, *see* Pl.'s Opp. to Deutsche Mot. at 12, as the Court concluded in its analysis of Count II, Robinson has not demonstrated that this foreclosure was "wrongful."  Therefore, the foreclosure on his property does not constitute a violation of Deutsche Bank's implied duty of good faith and fair dealing, and the Court will grant Deutsche Bank's motion to dismiss Count VII.[10]

## VIII.   Count IX:   Violations of 12 U.S.C. § 2605 Against Saxon, Deutsche Bank, and Chase Bank

Count IX alleges that Deutsche Bank and Saxon violated the Real Estate Settlement Procedures Act ("RESPA") by failing to notify Robinson when the servicing of the loan was assigned, sold, or transferred.   Compl. ¶¶ 67–70.   Under RESPA, "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person."   12 U.S.C. § 2605(b)(1) (2006). Deutsche Bank argues that Robinson's RESPA claim is time-barred.  Deutsche Mem. at 12.  An action alleging a violation of section 2605 must be brought within three years from the date of the occurrence of the violation.   12 U.S.C. § 2614.   The complaint does not specify what assignment, sale, or transfer Count IX is based upon, but since Saxon is the only servicer mentioned in the complaint, the Court will assume that Robinson is referring to when Saxon became the loan servicer.   The complaint does not state when Saxon began servicing the loan, but it alleges that Saxon was the loan servicer in January 2007 when Robinson requested a loan

---

10     Moreover, to the extent the contract that forms the foundation for Count VII is the note, and the acts that constitute the breach are the same acts listed in Counts V and VI, the Court will dismiss Count VII as impermissibly duplicative. *See Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 98 n.2 (D.D.C. 2002), quoting *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78 (3d Cir. 2000) ("[A] party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are 'identical to' a claim for 'relief under an established cause of action.'").

modification.  Compl. ¶ 17.  Based on this allegation, the statute of limitations ran on Robinson's claim in January 2010 at the latest.

In an attempt to avoid this conclusion, Robinson alleges that his claim is not barred based on the theory of equitable estoppel.  Pl.'s Opp. to Deutsche Mot. at 12; Pl.'s Opp. to Saxon Mot. at 10.  "'Equitable estoppel . . . comes into play if the defendant takes active steps to prevent the plaintiff from suing in time.'"  *Gonzalez v. Internacional De Elevadores, S.A.*, 891 A.2d 227, 241 (D.C. 2006), quoting *East v. Graphic Arts Indus. Joint Pension Trust*, 718 A.2d 153, 160 n.21 (D.C. 1998); *accord Chung v. DOJ*, 333 F.3d 273, 278 (D.C. Cir. 2003) ("'Equitable estoppel' precludes a defendant, because of his own inequitable conduct – such as promising not to raise the statute of limitations defense – from invoking the statute of limitations.").  "Although a plaintiff need not plead equitable estoppel in the complaint because it is 'an affirmative defense that [the] defendant must prove,' the plaintiff must set forth sufficient allegations to justify the application of the equitable estoppel doctrine if a defendant does 'raise[] the statute of limitations as a defense.'"  *Koker*, 2013 WL 40320 at *4, quoting *Firestone v. Firestone*, 76 F.3d 1205, 1210 (D.C. Cir. 1996).

In his complaint, Robinson alleges:  (1) that "Defendants are stopped from asserting the statute of limitations as an affirmative defense against the Plaintiff due to the Defendants own fraudulent concealment of wrongdoing"; (2) that defendants deceived him by "consciously conceal[ing] their scheme to foreclose on the note without having the lawful authority to do so"; and (3) that he "filed suit promptly upon discovering essential facts that give rise to the claims." Compl. ¶¶ 80–83.  Again, Robinson's complaint and opposition briefs fail to provide any factual support for these conclusory allegations.  *See* Pl.'s Opp. to Deutsche Mot. at 13, quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990) (simply reciting the rule that statute of

limitations "are customarily subject to 'equitable tolling'" but failing to explain why equitable tolling is appropriate in this case).  In fact, the allegations in the complaint demonstrate that Robinson had all the necessary facts to bring his RESPA claim in January 2007.  On that date, he knew that Saxon was his loan servicer because he requested a loan modification from Saxon. Compl. ¶ 17.  Because Robinson does not allege that Saxon or Deutsche Bank took any steps to prevent him from bringing a RESPA claim, the Court has no grounds for applying the theory of equitable estoppel.

Robinson also argues that his RESPA claim is not time-barred because of the District's discovery rule.  Pl.'s Opp. to Deutsche Mot. at 12; Pl.'s Opp. to Saxon Mot. at 10.  Courts in the District of Columbia "apply the discovery rule to determine when a cause of action accrues . . . in cases 'where the relationship between the fact of injury and the alleged tortious conduct is obscure when the injury occurs[.]'"  *Murray*, 953 A.2d at 321, quoting *Bussineau v. President and Dirs. of Georgetown Coll.*, 518 A.2d 423, 425 (D.C. 1986).  Robinson has not explained why the discovery rule applies in this case, i.e. why the relationship between the injury and alleged tortious conduct was obscure.

But even assuming that the discovery rule applies, Robinson has also failed to show why it should alter the Court's conclusion that the RESPA claim is time-barred.  Robinson argues that his claims are "subject to the discovery rule for the purpose of tolling the statute of limitations until the Defendants [sic] wrongful conduct was discovered, or should have been discovered through the exercise of reasonable diligence."  Pl.'s Opp. to Deutsche Mot. at 7; Pl.'s Opp. to Saxon Mot. at 7.  Here, the allegations in the complaint demonstrate that Robinson discovered that Saxon was his loan servicer in January 2007 at the latest, and he should have discovered through the exercise of reasonable diligence at that time whether he had a RESPA claim.  *See*

Deutsche Mem. at 12.  Since Robinson provides no argument to the contrary, the Court will grant Deutsche Bank and Saxon's motions to dismiss Count IX because the claim is time-barred.

## IX. Count X:  Declaratory Relief/Quiet Title Against All Defendants

Count X asks the Court to quiet title and declare Deutsche Bank's actions, including the foreclosure sale, unlawful.  Compl. ¶¶ 71–78.  Specifically, Robinsons asserts that the note and deed of trust were not properly assigned or transferred to Deutsche Bank, and therefore Deutsche Bank was not the proper note holder and did not have the legal authority to foreclose on his property.  Compl. ¶ 75.  But as the Court explained in its analysis of Count II, the alleged failure to record the assignment of the note or deed of trust to Deutsche Bank does not undermine the validity of the foreclosure sale.  Therefore, the Court will dismiss Count X against Deutsche Bank and Saxon.[11]

## X.  Count XI:  Equitable Estoppel

In Count XI, Robinson invokes the doctrine of equitable estoppel in a preemptive response to any statute of limitations defenses that defendants may raise.  Compl. ¶¶ 79–83. Equitable estoppel is not a freestanding claim, and "a plaintiff seeking the benefit of equitable estoppel must have some claim, sounding in equity or in law, that otherwise entitles it to prevail against the defendant."  *ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C. Cir. 1988). Since the Court has already rejected Robinson's equitable estoppel argument in its analysis of

---

11     In its motion to dismiss, Deutsche Bank asserts that Robinson has not identified the proper note holder or joined that party in the claim, and has not identified "what cloud on title should be removed."  Deutsche Mem. at 13.  Saxon also argues that no live controversy exists between Robinson and itself because Saxon is "a mere servicer of the loan" and does not have any stake in Robinson's claims.  Saxon Mem. at 7.  Since Robinson fails to address these arguments in this opposition brief, the Court will deem them as conceded and grant Deutsche Bank and Saxon's motions to dismiss Count X on these grounds as well.

Count IX, which is the only count the Court deems time-barred, the Court will dismiss Count XI against both Deutsche Bank and Saxon for failure to state a claim.[12]

## CONCLUSION

For the foregoing reasons, the Court will grant Deutsche Bank and Saxon's motions to dismiss all the counts against them for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[13]  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: March 25, 2013

---

[12]    Saxon did not affirmatively address Count XI in its motion to dismiss.  But since equitable estoppel is not a free-standing claim, the Court will also dismiss Count XI against Saxon.

[13]    Throughout his oppositions to defendants' motions to dismiss, Robinson argues that "[a]n opportunity to engage in discovery will provide the parties an opportunity to determine the specific facts to support plaintiff's claims."  *See, e.g.*, Pl.'s Opp. to Deutsche Mot. at 9, 11, 12; Pl.'s Opp. to Saxon Mot. at 9, 10,11.  But *Iqbal* requires plaintiff to plead facially plausible claims in order to survive a motion to dismiss and move on to the discovery stage.  556 U.S. at 678.  Since Robinson has failed to meet this burden, the claims against Deutsche Bank and Saxon will be dismissed.